UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ALBERTO GARCIA CONTRERAS,<br><br>    Defendant. | Case No. 15-cr-00244-JSC-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 5 |

Defendant Alberto Garcia Contreras moves to suppress a blood sample taken from him following his arrest for driving while under the influence of marijuana. (Dkt. No. 5.) Contreras contends that although he consented in writing to the blood draw, his consent was coerced and not voluntary and therefore the blood draw results must be suppressed. Having considered the parties' arguments, including those raised in the supplemental briefing, and having had the benefit of oral argument on September 10, 2015, the Court DENIES the motion to suppress.

**BACKGROUND**

On October 17, 2014, United States Park Police Officer April Ramos arrested Contreras in the Presidio area of San Francisco, California for driving under the influence of marijuana following a traffic stop and field sobriety test. After Contreras was arrested and placed in handcuffs, Officer Ramos took Contreras to the United States Park Police Station. (Dkt. No. 8-1 ¶ 3 (Decl. Alberto Contreras).). At the station, Officer Ramos stated "we need to take out blood to see what is in your system."[1] (*Id*. at ¶ 4) Contreras was not advised of his *Miranda* rights or any

---

[1] Officer Ramos submitted two declarations in support of the government's opposition to the motion to suppress. (Dkt. Nos. 7-1 & 11-1.) In her first declaration, Officer Ramos attests that her standard practice for obtaining consent—which she has no reason to believe she deviated from

1  consequences of a refusal to submit to a blood test. (*Id*. at ¶¶ 2, 4.) At the station, Contreras was

2  instructed to sign several forms, but the contents were not explained to him. (*Id*. at ¶ 7.) One of

3  the forms was a "Blood Test Request by Peace Officer" which states at the bottom:

> I, Alberto Garcia Contreras, do hereby consent to the withdrawal of a blood sample from my body; acknowledge that I have selected the blood test. I further certify that I am not a person who is afflicted with a heart condition and/or using an anticoagulant under the direction of a physician.

7  Contreras's handwritten signature appears just below this statement.[2] (Dkt. No. 7-1 at 12.[3])

8  Contreras was not advised that he could refuse to take the blood test. (Dkt. No. 8-1 at ¶ 4.)

9  Contreras was released from custody a few hours after his blood was taken (Dkt. No. 7-1 at 7), and

10  was thereafter charged with operating a motor vehicle under the influence of drugs and possession

11  of a controlled substance. (Dkt. No. 1.)

## LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment–

---

here—"is to first summarize the chemical sample refusal laws to the arrestee shortly after I place him or her under arrest, in order to determine at the scene whether the arrestee will consent to providing a sample and where I should transport the arrestee next. After I have transported the arrestee. . . I then read the arrestee the full formal chemical test admonition verbatim from a printed form." (Dkt. No. 7-1 at ¶ 7.) In her second declaration, Officer Ramos attests that upon arrest she advises arrestees that "the law requires the arrestee to provide a blood sample" and she then asks for "verbal confirmation" that the arrestee is "willing to provide a sample." (Dkt. No. 11-1 at ¶ 5.) Officer Ramos does not identify what source of law requires consent or describe the legal consequences of a failure to consent. (*Id*.) Once Officer Ramos arrives at the police station, prior to the blood draw, her practice is to read the California DMV Chemical Test Admonition which advises individuals of the consequences of their refusal to submit to a blood test under California law. (*Id*. at ¶ 6; Dkt. No. 11-1 at 5.) For purposes of this motion, however, the Court accepts Contreras's testimony that he was not advised that he could not consent; nor advised of any consequences for a failure to consent. Likewise, the Court accepts Contreras's testimony that he was not advised of his *Miranda* rights following arrest. (Dkt. No. 8-1 ¶ 2.)

[2] Contreras's signature is illegible on this document; however, as he has not disputed that it is his signature and attests that he signed several documents (Dkt. No. 8-1 at ¶ 7), the Court accepts the government's representation that it is Contreras's signature.

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government. *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001).  It must prove that the consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

## DISCUSSION

The government concedes that the blood sample taken from Contreras was a warrantless search that implicates the Fourth Amendment.  It contends that the search was nonetheless reasonable as Contreras provided written consent to the search.  Contreras insists that his consent was involuntary under the totality of the circumstances.

Courts consider five factors (sometimes referred to as the "*Jones"* factors) to determine whether consent was freely and voluntarily given: "(1) whether the defendant was in custody; (2) whether the arresting officer had his guns drawn; (3) whether *Miranda* warnings were given; (4) whether the defendant was notified that he had a right not to consent; and (5) whether the defendant had been told that a search warrant could be obtained." *United States v. Vongxay*, 594 F.3d 1111, 1119-20 (9th Cir. 2010) (citing *United States v. Jones,* 286 F.3d 1146, 1152 (9th Cir. 2002).).  "All five factors need not be satisfied in order to sustain a consensual search." (*Id.*) Contreras contends that the *Jones* factors weigh in his favor: he was in custody at the time his consent was given, he was not given a *Miranda* warning, he was not told he had the right to refuse to consent, and he was not told that a warrant could be obtained.  According to Contreras, these factors—combined with his youth and relative lack of experience with law enforcement—demonstrate coercion.

The Court disagrees.  While Contreras was in custody at the time of his written consent, there is no suggestion that Officer Ramos threatened Contreras in any way, let alone by having her gun drawn.  Further, although Contreras attests that no one explained the contents of the consent form to him, he does not declare that he did not read it or that he did not understand it.  Nor does he indicate that he lacked adequate time to review the form. *See United States v. Lindsey*, 877 F.2d 777, 783 (9th Cir. 1989) (affirming the district court's holding that a consent was consensual

3

where the officer did not threaten the defendant, and where the defendant had the opportunity to consider whether to withdraw his consent while the officer obtained a consent form). That Contreras's consent was given while he was already under arrest does not itself undermine the voluntariness of the consent, *see Lindsey*, 877 F.2d at 783 ("[a] person in custody is capable of giving valid consent to search"), nor does the lack of a *Miranda* warning, *see United States v. Ritter*, 752 F.2d 435, 439 (9th Cir. 1985) ("[t]he absence of *Miranda* warnings is not, however, dispositive of whether an individual voluntarily consented to a search). Finally, that Officer Ramos did not tell Contreras that the officer could obtain a search warrant actually supports a voluntariness finding. *See Vongxay*, 594 F.3d at 1120 (holding that the *Jones* search warrant factor is satisfied in favor of voluntary consent when the defendant is *not* told that a search warrant could be obtained); *United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir. 2000) ("application of the fifth [warrant] factor depends on the particular circumstances of the case and [] hinges on whether a suspect is informed about the possibility of a search warrant in a threatening manner"); *see also United States v. Patayan Soriano*, 361 F.3d 494, 504-05 (9th Cir. 2004) ("[e]ven assuming, however, that some of the statements were made in a threatening manner so as to imply the futility of withholding consent, when probable cause to justify a warrant exists, the weight of the fifth [warrant] factor is significantly diminished.").

    The primary issue here is Contreras's testimony that he was not told that he had the right to decline consent. He did not have the *unfettered* right to decline consent. Under federal law, "[w]hoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction." 18 U.S.C. § 3118(a). If a driver nonetheless refuses to actually consent to the blood draw, the driver can be prosecuted for the refusal. 36 C.F.R. § 4.23(c)(2). According to Contreras, no consequences were explained to him.

    But no case holds, or least Contreras has not cited one, that where a defendant signs a written form affirmatively stating "I, [defendant], do hereby consent to the withdrawal of a blood sample from my body," that written consent is insufficient because the officer did not advise the

4

defendant that he did not have to sign the form.  Even when the lack of the advisement is considered in connection with Contreras's custody status, age, and lack of prior contacts with law enforcement, there is simply no caselaw to support Contreras's urging of a constitutional violation.  This omission is unsurprising given that the Ninth Circuit recently noted: "[w]e doubt that the Constitution requires any admonition to be given to DUI suspects." *United States v. Harrington*, 749 F.3d 825, 830 (9th Cir. 2014).  Indeed, Contreras argues that Officer Ramos should have warned him that if he did not consent he could be prosecuted under federal law for not doing so.  That warning is arguably far more coercive than what Contreras attests happened here:  The government obtained consent via the written consent form without expressly explaining that if he withheld his consent he could be prosecuted for doing so.

Unlike federal law, under California law it is not a crime to refuse consent; instead, the refusal can be used against the driver in any subsequent DUI prosecution.  *Harrington*, 749 F.3d at 827.  Thus, in the alternative, Contreras argues that if Officer Ramos' testimony is accepted, Contreras's blood draw results must still be suppressed because she testified that it is her practice to warn of the consequences under California law of refusing consent.  Not so.  *Harrington*, the sole case upon which Contreras relies, merely held that it violates due process to prosecute a suspected DUI driver under federal law for refusing to consent to a blood test when the arresting officer incompletely warns the driver that the failure to consent could be used against the driver in court.  In other words, the officer misled the driver about the legal consequence of his choice to refuse consent.  749 F.3d at 830.  Here, in contrast, Contreras consented in writing and is not being prosecuted for a failure to consent.  *Harrington* is simply inapplicable.

Contreras's argument that implied consent laws are themselves insufficient to convey consent misconstrues the issue.  Under the circumstances here, the issue is not whether submission to a blood draw under an implied consent law is sufficient in and of itself to confer consent, *see State v. Brooks*, 838 N.W.2d 563 (Minn. 2013); *State v. Butler*, 232 Ariz. 84, 88 (Ariz. 2013), but rather, whether Officer Ramos' failure to advise Contreras of his right to refuse consent (or, more precisely, the consequences of refusing consent) rendered his actual written consent involuntary.  Under the totality of circumstances, and accepting Contreras's testimony as true, the government

has met its burden of showing that Contreras's written consent was freely and voluntarily given. Officer Ramos did not threaten Contreras to obtain his written consent, nor did she use any force to procure consent, and Contreras had adequate time to decide whether to provide his written consent.

## CONCLUSION

For the reasons discussed above, Contreras's motion to suppress is DENIED.

**IT IS SO ORDERED.**

Dated: October 8, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge